Good morning. May it please the Court, Linda McAleer for SPSO, Appellant in Case 18-16839, and Appellee in Case 19-15714. I'd like to reserve three minutes for rebuttal. We're here this morning because Defendants Brian Morris and We Fix Ugly Pools admitted to downloading, copying, making minor alterations to, and publishing SPSO's copyrighted works. First, I'd like to discuss the District Court's error in invalidating SPSO's copyright registration. Then I will discuss the Court's error in applying DMCA Section 1202 to SPSO's copyright management information. And finally, I will discuss why the District Court's ruling denying Defendants' request for attorney's fees is appropriate and should be affirmed. Once the Defendants admitted to downloading and copying SPSO's website without SPSO's knowledge or authorization, they had no— It took a little while to get there, didn't it? I'm sorry? It took a little while to get there, didn't it? To get—I'm sorry? To get to where a determination could be made of whether the mark, in fact, had been infringed. Didn't you file the wrong thing? Well, we did have the wrong date. The application had the wrong publication date. However, the first amended complaint contained the accurate date of July 3rd, 2014, and Aaron Hagen, a principal of SBO, had testified on August 8th, 2016, that July 3rd was the first original publication date. The errors in the application were sorted out through communication with the USCO. But, counsel, Mr. Hagen gave the register a declaration that said in paragraph 5, the sample of the platform provided to the United States Copyright Office with SPSO's copyright application in 2015 is the same as the website first appeared when published on July 3rd, 2014. That was false. And when the district court appropriately, according to the statute, asked the register what the register would have done, the register said if we knew this, we wouldn't have allowed the copyright. So why is the district court in any way wrong that that was the end of your suit? Because in the end, SPSO did not register a website. SPSO registered text and photos. They did this due to a change in the compendium's definition of a website. Previously, you could register a website. Currently, the website is treated as a medium, and you register the content within it. After being informed of this by the USC, my co-counsel worked with them to constrain our application such that the deposit and the application would be in conformity. So what we ultimately registered were the text and photos as they appeared on July 3rd, 2014, and they were the same in the deposit as they were when they first were published on July 3rd, 2014. Those text and photos, which ultimately were registered, did not change. The other elements like the big commerce coding and the NEMO photos. Mr. Hagan's affidavit in paragraph 5 was untrue, correct? It was true that the text and photos contained in the website. He's a layperson. That's not my question. My question is, was paragraph 5 of Mr. Hagan's declaration or affidavit true? To Mr. Hagan's understanding, it was. That's a different question. There's a different question about whether it's true as opposed to whether someone lies. Those are two different questions. Is paragraph – was paragraph 5 true? It is not true in that there was additional elements, but those – No, it's not true. The register says – or the acting register said she wouldn't have issued the certificate of registration, and 411A says no civil action shall be instituted until preregistration or registration has been made. And then there is this language about if there's a claim of inaccurate registration information, you ask the register. And the district court asked the register. The register said, no, I wouldn't have issued it. And I still don't understand, counsel, why that meant your suit couldn't go forward as the district court found. Because the error is in the phrasing of the question. The court asked the USCO, if you had known that the website didn't match, would you have issued? We didn't register a website. The photos and content matched. The question was posed in such a way that the USCO could only answer in one way. And the USCO was aware of this. It's in the USCO communications with Mr. Leyva. They knew that the pub date at the bottom of the page was 2015. They asked about changing the date back to 2014. They found our explanation satisfactory. They found us constraining the photos satisfactory. You only had one certificate of registration, correct? Yes. And Section 411 says a certificate of registration satisfies the requirements of this section, regardless of whether the certificate contains any inaccurate information, unless the inaccurate information was included on the application, which it was, and the inaccuracy of the information, if known, would have caused the register to refuse registration. So these other things that you're saying, I don't see how they affect the clear language of the statute, which is you need a certificate of registration. The certificate of registration, even if it contains inaccurate information, that's still good enough unless A and B, and the district court found A and B after consulting the register. But I believe that's due to the misleading nature. The question posed to the USCO. It was posed in such a way they could only answer in the affirmative that they would refuse registration, and it was posed as though they didn't know. Based on the communications between Mr. Leyva and the USCO, they did know. They knew there was a discrepancy. They knew there was additional information in the deposit. So what you're saying is that the district court, in evaluating the summary judgment motion, doesn't just have to decide did the register say I wouldn't have issued it. It has to decide if the register made a mistake in saying I would have refused registration, that that's part of the elements that, yeah, I understand, Acting Register, that you said you would have refused the registration, but I think you got it wrong? No, I believe the court's error occurred earlier than that when they did not give weight to plaintiff's evidence in the light most favorable to them as a nonmoving party. They didn't weigh counsel's admission of the error, explanation of the error, apology for the error, all of which was submitted on the record as part of the communications with the USCO. But the register knew all that, right? That's what I'm saying is the register knew all of that, but the question was posed in a way as though there was some other falsity they were not aware of, putting them in a position where in order to comply with their own regulations, they had to answer that they would refuse registration. So the district court forced the register to answer the question in the negative? I believe that the question was weighted in such a way that there was no other way for them to answer. The district court invited the parties to submit questions, and she didn't use them. There were more neutral ways to phrase the question to get the USCO's response. Also, the USCO acknowledged in that response that it is not unusual for communication such as this to happen and that it's okay for people to correct their applications as they go through the process. That's what happened here. We made a mistake. We owned our mistake. We corrected it. The text and photos that were registered matched the text and photos that were on the deposit. If I can move on to my next point, I would like to address the narrow interpretation of Section 1202 of the DMCA. Here, the court erred when it too narrowly applied the definition of copyright management information to SPSO's copyright notice. 1202 does not specify what specifically has to be in a copyright notice to be copyright management information. It offers a variety of elements such as numbers, symbols, the author's name, the owner's names, or other identifying information. Here, SPSO owned the content on the websites, the domain names, and was the registrar. Both sites, the Pool and Spa Parts Now and Kessler's license site, all Pool and Spa Parts, belong to SPSO. For the defendants to say by changing Kessler's licensed site, CMI is not changing SPSO's CMI is disingenuous at best. When the court ruled that it was not CMI, that ruling was not premised on any supporting authority. Therefore, it was wrong. Additionally, there is no authority specifying how close CMI needs to be placed to the related works. Let's go back to your first issue. So the information that you're claiming was the copyright management information did not include the actual name of the copyright owner, correct? It owned the name, it listed the name of a, call it a, not even a subsidiary, just like an alternative name. I think that your client somewhere, I can't remember where, described it as a fictitious name. Yeah, so for each licensee they created a separate domain. So if your client had put on the website copyright, let's assume the dates right, copyright 2014 Mark Bennett, and the defendants removed that, would they, by doing so, have violated section 1202? I believe if upon inquiry the copyright Mark Bennett led to the proper copyright owner, they would have. When you do a rights clearance, you check who is, you check GoDaddy, you find out who it's registered to. And in this case, a simple search going to GoDaddy would find A.H. Poolman at Yahoo listed as the registrant and as the technical contact. And A.H. Poolman is in fact Aaron Hagen. So albeit it may take a few steps to get there, a phone call or some light research would eventually lead you to sell pool supply online. Further, it is, the Hagens are lay people. They just do what all the websites do, and 99% of websites put the copyright information in the footer. Well, they may be lay people, but that doesn't mean that what they put on the website is part of the 1202C1, 2, or 3 definition of what constitutes copyright management information. But it is other identifying information. I would argue that it does in fact fall under 1202C. It is the other identifying information for the owner of the content as well as the domain name. Well, it says the name of and other identifying information about the author of a work. So your view is the law is that if they could, you list Mark Bennett or somebody else there as the copyright owner, and if they could do four or five internet searches and connect Mark Bennett with the true copyright owner, then putting Mark Bennett on there is copyright management information under 1202C2. Well, the courts interpret CMI quite broadly, and in fact in Freedman, the court held that you could be found guilty of removing CMI even if you didn't personally remove it. But there was no question that it actually was CMI. I mean there was no question about whether the correct name of the copyright owner or holder was listed, right? That is true, but again, they interpret the definition of CMI broadly, and although it has not been determined in the Ninth Circuit, there is the Murphy case out of the Third Circuit. It says the statute imposes no restrictions on the context in which such information must be used in order to qualify as CMI. Do you want to reserve? I would like to reserve. Thank you. We'll go two minutes. Thank you. May it please the court. Excuse me. May it please the court. Kenneth Spafford on behalf of defendant appellees,  I want to start by responding to a couple of points that were just raised. With respect to whether that fictitious name on the bottom of the website could be traced, during deposition we asked plaintiff's representative, and it's in the record, we asked plaintiff's representative, how would someone seeing that notice know that plaintiff owned the website? And he responded that nobody needs to know that plaintiff owns the website. It was not his intention to give anyone notice about copyright ownership. With respect to whether the statement in plaintiff's declaration was true or false, paragraph five, the copyright examiner was very clear with plaintiff's copyright attorney about what could be claimed as content. The copyright examiner explained to the copyright attorney, you can only claim the most recent content in a copyright deposit on a website. Your most recent update, that's what you can claim. Anything earlier than that is not what you claim, and that's what your first date of publication would be and your date of completion. I want to briefly discuss the issues raised in plaintiff's appeal before getting to the attorney fee appeal. Plaintiff's appeal brief raised three arguments. One was based on the application approach under the 411A, but the Supreme Court has said that a registration is required in order to proceed with litigation. The second argument was that under 411B, defendants need to show fraud to invalidate a registry. Gold value. Pardon? Gold value. There you go. Yes, yes, Your Honor. But gold value, right, says you only need a knowing misstatement. And the third argument that plaintiff made in the brief was that it made no knowing misstatements to the Copyright Office, but I think it's clear from the record from the Copyright Office's own retrospective of what happened and the district court's very detailed findings of the facts of the case that the plaintiff did make knowing misstatements. Plaintiff has never denied being unaware of that additional content in the deposit. The plaintiff has never denied the knowing misstatements that were made to the Copyright Office. With respect to the DMCA claim, I just want to note that the generic copyright notice at the bottom of the website originally was based on plaintiff's claim to a platform, which was this complex, multi-component work that included the website. During litigation, it was revealed that plaintiff did not design that website and did not own the website. The website was designed and the copyright was owned by a third party. So you have a copyright at the bottom of the website, and the only thing that plaintiff actually owned on the website were some product pictures that were interspersed with other businesses' product pictures. And there were copyright notices on those product pictures, and there's no dispute that the defendants never touched those copyright notices, never altered them, never removed them, and never added their own copyright notice to those product pictures. Defendant's copyright notice was under defendant's own creative content, which separated the copyright notices from those pictures. So the district court was correct to dismiss both of plaintiff's 1202 claims. And unless the court has any questions about the substantive issues, I want to go to the attorney. Okay. I want to start with whether a successful defense under 411B of the Copyright Act furthers the purposes. Counsel, you got lucky here, right? I mean, you got lucky that the case wasn't litigated in a way that had the precondition, in your view. But if the precondition had been satisfied here, and these are technical requirements, the photos were copyrightable. There was a notice that would have been good enough had there been an appropriate registration statement, and your clients infringed, yes? No, Your Honor. Why is what I'm saying wrong? Okay. And I'm glad you asked. The court never found infringement. I understand that. Okay. Because we never, just to make clear, because we never had to reach that issue because, as you say, registration is a necessary first step. And this is not really in our briefs because we never had to reach that issue. But to make clear, we never made an infringement. Plaintiff's business or, sorry, defendant's. I'm sorry, but you took your website down like a day or two after they told you you were infringing? No, Your Honor. What is it that you did a couple of days after receiving their notice? It was removed. The website was actually taken down, I believe by the host, by an infringement notice to the host. But I want to make clear what happened. The defendant was a business partner with plaintiff's head salesman. And plaintiff's head salesman authorized my client to improve the website, include by making a copy. So he had authority from the plaintiff, from the plaintiff's head salesman, to make this website. My client is a successful businessman. He has his own multimillion-dollar pool company. He's really good at marketing. And he was helping a friend of his improve this website. He has great ideas about website design. And so he said you're on attorney's fees. Pardon? You're on the issue of attorney's fees, correct? I'm answering Judge Bennett's. That's what you wanted to shift to. I know. My colleague is done there. I want to ask about fees. Can I do that? If I could just briefly finish, conclude with what I'm saying. I suggest you move to Judge Hawkins. I'm just saying it's not a black hat, white hat thing. And we did not infringe. And it was not a matter of infringement. We didn't just get lucky if it had gone on. I'm sorry. Okay. Yes, Your Honor. Here's my question. Should have anticipated it, I suggest. Does a successful defense of an infringement action automatically entitle that person or entity to fees? No, Your Honor. It's discretionary. Yes, it is discretionary. Tell us how then Magistrate Judge Beatty abused her discretion. The standard of review for denial of attorney's fees is abuse of discretion on factual matters, but on errors of law is subject to de novo review. And if there is an error in the application of law. We did not dispute any of the facts that the Magistrate Judge found. She did a great job of outlining everything that happened in the case. With respect to whether it furthers the purpose of the Copyright Act, I can address that first. There was just a conclusion that she said it doesn't necessarily further the progress of the creative arts. This case sort of strikes me as the classic example of a judge looking at both sides of the case and saying to herself, a pox on both your courts. You had an infirm technical or otherwise infringement claim, and it turns out that your client's hands are not entirely clean. What's wrong with a judge in that circumstance to say no fees? I think that would be fine, but that's not what the district court found. The district court went through a list of conduct, and I would note in the district court's attorney fee order, there is nothing finding, there are no findings that the defendants acted unreasonably or anything in there that suggests the defendants could have acted unreasonably. But sort of, I think, to Judge Hawkins's point, I don't want to put words in Judge Hawkins's mouth, but you have the Magistrate Judge who essentially went your way on every single substantive issue. Went the extra mile, went the extra step, of course, asked the register, wrote her own questions to the register, found completely in your favor, and then in deciding whether this could further the purposes of the Copyright Act and the other attorney's fees questions, despite having gone completely in your favor on every substantive issue, decided no, this isn't the case where we should be awarding attorney's fees. And so your view is we should find she abused her discretion because she didn't make the kinds of specific findings or you think she got legally wrong one or two of the findings, the legal conclusions? Her findings, her factual findings were accurate, and we don't dispute them. It's the legal standard she used applied to those findings. I'll give you an example. For objective unreasonableness, she said, well, the plaintiff couldn't have known from the outset that the chances of success were slim to none. She listed all of these actions that the plaintiff took, where if you read them you would say, oh, yeah, this is objectively unreasonable. But she never says whether they are or not. She just says at the beginning they probably had a case. The problem is if that's the legal standard, then any plaintiff can file a lawsuit that is colorable and engage in all sorts of misconduct and say, well, that doesn't count. All that matters is what we did at the beginning. If that's the standard, that can be affirmed. The plaintiff manufactured false evidence. A copyright registration is prima facie evidence of the facts stated in the certificate. In the middle of litigation, the plaintiff went to the copyright office and knowingly obtained false evidence to avoid summary judgment. So I think if you consider all those factors and what the plaintiff engaged in, you would find objective unreasonableness. But the district court intentionally puts blinders on. The gold value district court did something very similar. They said, well, they could have known at the beginning that they had the case. Who are you talking about? She put blinders on. I'm sorry, the district court judge. I'm sorry, I shouldn't. The magistrate judge. I should be more respectful. The magistrate judge used as the legal standard for objective unreasonableness, which is supposed to be accorded weight, the greatest weight, said the standard is if they knew at the beginning that they had a decent case or they could have a colorable claim, they couldn't have known at the outset that their chances were slim to none, therefore they're not objectively unreasonable. With respect to whether it furthers the purposes of the Copyright Act, the Copyright Office has no real mechanism for weeding out bad-faith claims. It doesn't consider third-party submissions. It doesn't allow adversarial proceedings like the U.S. Patent and Trademark does for patents and trademarks. So there's no way for a third party to cancel a trademark. I mean, sorry, there's no way for a third party to cancel a copyright. And it doesn't have investigative powers. And this is a textbook case when the plaintiff secretly went to the Copyright Office and said, I know our application says 2015, but here's an affidavit saying this is how the website looked when it's in 2014. And the copyright supervisor, as you noted, said, Are you sure? Because there's on the bottom of your website deposit it says copyright 2015. And plaintiff's attorney says, yes, please update the registration. And the Copyright Office basically throws up its hands and says, okay, we take your word for it, here's your registration with the 2014 date. And it wasn't the copyright supervisor's fault. She was just following the rules of the Copyright Office that you take the plaintiff at their word. Section 411B, that's really the only way for a third party to help defend the Copyright Office from false claims. Oh, and one more thing. With respect to the Gold Value District Court, what the Gold Value District Court did, very similar to our case, was say there was a claim at the outset. So considering that, that was not objectively unreasonable for the plaintiff who filed the claim. On the other hand, here are other things the plaintiff did during the lawsuit that were objectively unreasonable. And on balance, on the whole, plaintiff was objectively unreasonable. And this court affirmed that district court's findings. And I have nothing further to add unless there are other questions. Thank you very much, counsel. Thank you. Okay, first to address the issue of Mr. Hagan's testimony that no one needed to know. Again, Mr. Hagan is a lay person, and he doesn't understand the effect of what follows the symbols. And moreover, you don't even have to put copyright notice on things anymore for them to be copyrighted. So in a certain light, he's correct. No one did need to know. You're not required to put a notice on there to have the rights to the copyright. Regarding the statement that you can only claim the most recent content, in the end that is what counsel and SPSO did. In coordination with the USCO, we did not claim any later added content. We constrained our application only to the text and photos that appeared on the website on July 13, 2014. And this is evident in the communications with the USCO at EOR 646, where it says we now only want to do the text and photos. And that is what the USCO registered. The additional content on the websites that he referred to for We Fix Ugly Pools website and that the notice was not placed near the photos is misleading. If you compare EOR 179 to 171 and 172, which are We Fix Ugly Pools website and all pool and spot parts now, they're almost identical. Dependents submitted a later version where they had changed the content so it wasn't quite so obviously attached to the photos, and that is at EOR 383, maybe SCOR 383, which appears as though they made more significant changes than ultimately they did to the website. But at some point in time, the website appeared virtually identical to SPSO's website. As to the design and copyrighted work owned by Big Commerce, the third party, that is part of the communication with the USCO, which we went through the process with the USCO and constrained our application to omit those elements that we did not own copyright to, which led to this whole thing. None of these communications were done in secrecy. We didn't reach out to the USCO secretly to hide anything. The USCO emailed my co-counsel, and it started a dialogue that began in August, well before the motion for summary judgment was filed. All right, you need to wrap it up, counsel. Okay. You're in the red. The last thing I would say is there's no bad faith here. There was an inadvertent error, and the fees are not appropriate because a licensee cannot become a licensor and authorize somebody to photocopy a website. Thank you. All right. Thank you very much, counsel. Thank you both for your argument in this case. This matter is submitted.
judges: Hawkins, Owens, Bennett